UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY HOLLAND,

                 Plaintiff,

v.

ANDRE G. BOUCHARD, Chancellor of the State of
Delaware and ROBERT B. PINCUS, as Custodian of
TransPerfect Global, Inc.,

                 Defendants.

Case No. **16-cv-05936**

**COMPLAINT**

Plaintiff, by his attorneys Garvey Schubert Barer, complains of the Defendants and alleges:

## JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343 as the claim herein is pursuant to 42 U.S.C. §1983 to redress the deprivation, under color of State law, of Plaintiff's rights and privileges under the Constitution of the United States.

2.      Venue is proper in this district because a substantial part of the events giving rise to the claim occurred in the City, County, State and Southern District of New York.

## PARTIES

3.      At all times hereinafter mentioned, Plaintiff was, and is, a resident of the County of Kings, City and State of New York, employed for 12 years by TransPerfect Global, Inc. ("TransPerfect") at a principal place of business in the City, County, State and Southern District of New York.

4.      Upon information and belief, at all times hereinafter mentioned, Defendant Andre G. Bouchard was, and is, a Chancellor in the Chancery Court of the State of Delaware.[1]

5.      Upon information and belief, at all times hereinafter mentioned, Defendant Robert B. Pincus was, and is, an attorney, and a member of the law firm of Skadden Arps Slate Meagher & Flom.  By order entered August 13, 2015, Chancellor Bouchard appointed Mr. Pincus as the custodian of TransPerfect.

## THE **TRANSPERFECT LITIGATION**[2]

6.      Upon information and belief, founded in 1992, TransPerfect is one of world's largest translation and litigation support companies, operating world-wide through more than 100 offices, employing more than 4,000 people, generating approximately $500,000,000 in revenue and approximately $80,000,000 in net profit annually.

7.      Upon information and belief, TransPerfect is privately held entirely by two equal shareholders, its founders Philip Shawe and Elizabeth Elting, organized and existing under the laws of the State of Delaware.[3]  Until the events described below, Shawe and Elting were also TransPerfect's only directors.

8.      Apparently, tension in the relationship between Mr. Shawe and Ms. Elting resulted in litigation in various forums in New York and Delaware (the "TransPerfect Litigation").

---

[1] Judicial immunity does not bar a claim for prospective injunctive and declaratory relief.  Strauch v. Dowd, 2016 WL 3212180 (2nd. Cir., June 10, 2016).

[2] The allegations in this section of the complaint are largely drawn from the public court record of *In re TransPerfect Global, Inc.,* C.A. No. 9700-CB (and related cases) pending the Court of Chancery of the State of Delaware.

[3] Mr. Shawe's mother owns 1% of the equity but apparently unsurprisingly aligns with Mr. Shawe.  All references herein to Shawe are to the collective 50% ownership of the Shawe family.

9.      Chancellor Bouchard is presiding over the TransPerfect Litigation in the Court of Chancery in the State of Delaware.

10.     Despite its remarkable growth, extraordinary and continuing profitability and obligations to its more than 4,000 employees, by August 13, 2015 decision and separate Order Chancellor Bouchard granted a petition by Elting to dissolve TransPerfect under 8 *Del. C.* §§226(a)(1) and (a)(2).

11.     In that same decision and Order, Chancellor Bouchard appointed Defendant Pincus as custodian for TransPerfect, entrusting him with the statutory authority to supervise the sale of TransPerfect in his discretion, and to act as a third director to break any deadlock between Shawe and Elting.  However, Pincus was not vested with the authority that a receiver would have over the company's assets.

12.     Chancellor Bouchard also attempted in that Order to cloak Defendant Pincus with full immunity as if he were an officer of the State.

13.     Neither Plaintiff, nor any other TransPerfect employee, other than Shawe and Elting, were parties to the TransPerfect Litigation, and the interests of the employees were not represented in the TransPerfect Litigation.

14.     Neither could Plaintiff – nor any other TransPerfect employee – intervene in the TransPerfect litigation because no one other than Shawe and Elting had or have an interest in corporate control and profit distribution questions at issue before Chancellor Bouchard. Consequently, neither Plaintiff – nor any other TransPerfect employee – has standing to appeal Chancellor Bouchard's decision and Order.

**PLAINTIFF – AND MANY OTHER TRANSPERFECT EMPLOYEES -- SPEAK OUT**

15.     As a consequence of Chancellor Bouchard's decision and Order, Plaintiff – and many other TransPerfect employees – became quite concerned regarding the future of TransPerfect and their own jobs and careers.

16.     Being unable to participate in the TransPerfect Litigation, Plaintiff – and many other TransPerfect employees – searched for other avenues to publicly express their concerns and opinions as to the future of the company and their own futures, and to attempt to avoid the risk that the company for which they had labored so successfully would be destroyed by a forced sale.

17.     In one effort, on or about April 26, 2016, 610 TransPerfect employees published an open letter, broadly disseminated in the United States mails to approximately 10,000 Delaware households, urging the public to voice objection to Chancellor Bouchard's appointment of a custodian for the forced sale of such a successful business.

18.     Subsequently, on or about May 11, 2016, a number of TransPerfect employees formed an entity known as "Citizens for a Pro-Business Delaware, Inc." ("Citizens").  Plaintiff was Citizens' incorporator.

19.     On or about May 23, 2016, Citizens issued a press release published, *inter alia*, in Bloomberg Law and the Delaware State News setting forth the belief of its members that Chancellor Bouchard's Order for the sale of TransPerfect was inappropriate and explaining why this was so.  The release promised "a multifaceted campaign" to raise awareness "with Delaware residents, elected officials, and other stakeholders, to ensure they understand the consequences the Court's ruling would have on the state and its underlying economy."

4

20.     To conduct its public campaign, Citizens retained the professional public relations firm that had previously advised former New York City Mayor Michael Bloomberg.

21.     Citizens also retained a respected lobbyist in the State of Delaware to argue its cause in the Delaware State Legislature, the result of which was a June 28, 2016 joint resolution introduced in the Delaware State Senate and General Assembly requesting the Delaware State Bar Association to examine Delaware's existing business entity laws with a view towards whether the right to order dissolution or sale of a profitable company be reexamined.

## DEFENDANT PINCUS IMMEDIATELY MOVES TO STIFLE PLAINTIFF AND CITIZENS

22.     On May 23, 2016, the very same date that Citizens' release was published, written instructions were issued to all TransPerfect employees, including Plaintiff and many other TransPerfect employees working at TransPerfect's offices in the City, County, State and Southern District of New York, stating as follows:

> It has come to our attention that some of our employees have recently spoken with the media about the pending litigation between the shareholders of TransPerfect, and in some instances seemingly have sought to attempt to pressure the Delaware court. We believe that those actions are counterproductive and that they should stop.

23.     Upon information and belief, Defendant Pincus caused these instructions to issue. The bases for Plaintiff's information and belief are that:

A.     the instructions were issued in the name of TransPerfect's Board of Directors;

B.     by email that same date, Mr. Shawe advised that he did not approve issuing those instructions;

C.     that means that only Defendant Pincus, in his role as the court-appointed third TransPerfect director, could have joined with Ms. Elting in serving her self-

interest, and authorized the instructions that TransPerfect employees cease and desist exercising their right to free speech;

D.      that the instructions were sent under cover of email from Joel Mostrom, of Alvarez & Marsal North America, who was hired by Defendant Pincus to assist him in executing the duties assigned to him on appointment by Chancellor Bouchard; and further

E.      that by letter dated May 27, 2016 to Chancellor Bouchard, Ms. Elting's counsel specifically and explicitly admitted that "The Custodian" is addressing the situation.

24.     Moreover, Plaintiff, as the incorporator of Citizens, was singled out for particular intimidation. In or about late May, 2016, Mostrom telephoned Plaintiff within the City and State of New York, repeatedly and insistently asking Plaintiff to identify the other TransPerfect employees who were members of Citizens; and implying that Plaintiff's employment could be at risk if Citizens' efforts continue and Plaintiff did not cooperate with attempts to stifle employee activities regarding judicially authorized forced sale of the company.

25.     By reason of the May 23 written instructions and the phone call from Mostrom, Plaintiff reasonably believed, and reasonably believes (as would any person of reasonable firmness similarly situated), that his TransPerfect employment is at risk as a result of his participation in speaking out against the Order compelling the involuntary sale of TransPerfect and in petitioning the Delaware State Legislature for legislative relief.

## CHANCELLOR BOUCHARD SUBSTANTIALLY ASSISTS
## IN EFFORTS TO STIFLE PLAINTIFF AND CITIZENS

26.    Also within days of the Citizens' press release and mailing, on or about May 27, 2016, Ms. Elting's lawyers wrote to Chancellor Bouchard complaining of Citizens' (a) "media blitz on radio, in newspapers, and in on-line publications"; (b) to Citizens hiring of "a prominent New York public relations firm"; and (c) its hiring local lobbyist Patrick Allen to "suggest legislation to the governor and legislators to block  .  .  . 'judicial overreach' from occurring again." (Ellipses in the original).

27.    Counsel's May 27, 2016 letter to Chancellor Bouchard specifically identified Plaintiff as Citizens' incorporator and an "employee in TransPerfect's New York office . . ."

28.    By letter to Chancellor Bouchard dated July 11, 2016, Ms. Elting's counsel conceded that Defendant Pincus had actually unsuccessfully searched TransPerfect's server looking for any communication relating to the efforts by Plaintiff and Citizens.

29.    Not to be stymied in attempts to uncover and stop all TransPerfect employees' efforts to express their positions and petition to redress grievances, upon information and belief Pincus' lawyers submitted a proposed order to Chancellor Bouchard, which, among other things, afforded Defendant Pincus the right to demand that employees deliver private communications devices for inspection without regard to privacy concerns.

30.    The clear implication of counsel's July 11, 2016 letter is that this provision in the proposed order is intended to suppress TransPerfect employees' efforts to express their views and opinions.

31.     The proposed order also vested Defendant Pincus with full, complete and virtually unchallengeable authority over all employment decisions, and makes all TransPerfect employees (without regard to whether they would be subject to Delaware jurisdiction) subject to sanction by the Court for failing to "cooperate fully" with anything Defendant Pincus requires.

32.     And, finally, the proposed order attempts to choke off any reasonable opportunity for employees to obtain judicial redress by directing that all actions by employees (again, without regard to whether they are subject to Delaware jurisdiction) could only be brought before Chancellor Bouchard.

33.     The proposed order was supposedly to establish the procedure for TransPerfect's forced sale. These provisions in blatant derogation of the rights of TransPerfect employees – including Plaintiff – have absolutely nothing to do with the sale procedure. The sole purpose for including these oppressive provisions could therefore only be to stifle any employee dissent, and to permit a witch hunt and expulsion of any employee – including Plaintiff – attempting to speak out against Chancellor Bouchard's forced sale of TransPerfect or to petition the legislature or judiciary to redress their grievances.

34.     Mr. Shawe's lawyers objected to certain provisions of the proposed order.

35.     On July 18, 2016, Chancellor Bouchard entered the proposed order exactly as submitted by Pincus' lawyers, without changing so much as a single comma.

36.     This action promptly follows.

## DEFENDANTS' CONDUCT UNCONSTITUTIONALLY
## CHILLS PLAINTIFF'S EXERCISE OF HIS FIRST AND FOURTH
## AMENDMENT RIGHTS UNDER THE COLOR OF STATE LAW

37.     Given Chancellor Bouchard's order -- particularly in light of the instructions against public statements and the harassing phone call issued and/or caused by Defendant Pincus in the City, County, State and Southern District of New York – Plaintiff is afraid to speak concerning TransPerfect's situation, or to petition a legislature for appropriate relief.

38.     Since any such conduct could result both in Plaintiff's losing his job and facing sanctions from Chancellor Bouchard, any similarly situated individual of ordinary firmness would be similarly chilled by the conduct of Chancellor Bouchard and Defendant Pincus.

39.     Likewise, in limiting any judicial challenge by any TransPerfect employee, including Plaintiff, to his court without regard to even minimal contacts required by notions of constitutional due process, justice and fair play, Chancellor Bouchard is further depriving TransPerfect employees, including Plaintiff, of the First Amendment right to petition, and to due process of law.

40.     By giving Defendant Pincus the right to demand personal and private electronic records of any TransPerfect employee (including Plaintiff) without any warrant, judicially challengeable subpoena or even any probable cause, and putting any such employee at risk of losing his job and being judicially sanctioned for failing to immediately obey Defendant Pincus' direction, deprives Plaintiff of his constitutional fourth amendment right of privacy, and to be free from unreasonable search and seizure.

41.     Moreover, this has all been done without Plaintiff – or any TransPerfect employee – being given even the most basic opportunity to be heard by the Delaware Chancery Court before the order depriving them of important constitutional rights was entered.  The TransPerfect

employees do not have a basis to intervene in the TransPerfect Litigation, and do not have standing to appeal the order.

42.     Plaintiff's constitutional rights therefore have been, and are continuing to be, violated by Defendants Bouchard and Pincus without due process of law.  Absent this action, Plaintiff has no forum in which to vindicate his constitutional rights.

43.     Defendants have acted, and are acting, under color of state law.  Chancellor Bouchard is an instrumentality of the State of Delaware, and so is Defendant Pincus by virtue of Chancellor Bouchard's orders purporting to cloak Defendant Pincus with the authority of the Court.  Additionally, Chancellor Bouchard's July 18, 2016 order renders substantial assistance to Defendant Pincus' unconstitutional conduct.

44.     By reason of the foregoing, Defendants Bouchard and Pincus have acted, and continue to act, in violation of 42 U.S.C. §1983.

45.     Plaintiff desires to exercise his constitutional rights in regard to the future of his job, career and employer without concern over losing his employment or being judicially sanctioned.

46.     Plaintiff is irreparably harmed by ongoing deprivation of his constitutional rights.

47.     An actual case and controversy exists between Plaintiff and Defendants.

WHEREFORE, Plaintiff Timothy Holland requests that judgment be entered jointly against Defendants Andre G. Bouchard and Robert B. Pincus:

A.      Declaring and adjudging that the July 18, 2016 order entered by Defendant Bouchard is null and void as against the Constitution of the United States insofar as it (i) permits Defendant Pincus to demand the private property and electronic data belonging to Plaintiff; (ii) permits Defendant Pincus to terminate Plaintiff's employment for publicly expressing and

10

disseminating his views as to the forced sale of TransPerfect; (iii) permits Defendant Pincus to terminate Plaintiff's employment for petitioning any legislative body or court for redress of his concerns regarding the forced sale of TransPerfect; (iv) requires Plaintiff to bring claims regarding TransPerfect only in the Delaware Chancery Court; and (v) subjects Plaintiff to any sanctions issued by the Delaware Chancery Court;

      B.     Forever and permanently enjoining Defendant Bouchard from enforcing any aspect of his July 18, 2016 order as against Plaintiff, including but not limited to enjoining Defendant Bouchard from issuing any sanction against Plaintiff and/or from restraining Plaintiff's access to any Court in these United States;

      C.     Forever and permanently enjoining Defendant Pincus from (i) terminating, or in any way acting as a director to cause the termination of, Plaintiff for his publishing and disseminating his personal views regarding the forced sale of TransPerfect, or for exercising his right to petition any legislature or judiciary to redress any grievance regarding the forced sale of TransPerfect; and/or (ii) obtaining access to and/or demanding production of Plaintiff's personal electronic devices (including, but limited to, cell phones, computers, tablets and the like) except by written subpoena challengeable before a court in the State of New York;

      D.     The costs and disbursements of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

      E.     Such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
       July 25, 2016

GARVEY SCHUBERT BARER

By: _____

Andrew J. Goodman, Esq. (AG-3406)
Attorneys for Plaintiff
100 Wall Street, 20th Floor
New York, New York 10005
(212) 965-4534
agoodman@gsblaw.com