```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
TIMOTHY HOLLAND,                                            :
                                                            :
                                    Plaintiff,              :
                                                            :         16-CV-5936 (VSB)
                - against -                                 :
                                                            :         **MEMORANDUM & OPINION**
ANDRE G. BOUCHARD, Chancellor of the                        :
State of Delaware and ROBERT B PINCUS,                      :
as Custodian of TransPerfect Global, Inc.,                  :
                                                            :
                                    Defendants.             :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/19/2017

Appearances:

Andrew J. Goodman
Jeanne C. Barenholtz
Malcolm Seymour
Garvey Schubert Barer
New York, New York
*Counsel for Plaintiff*

John K. Villa
Anne M. Rucker
William T. Burke
Williams & Connolly LLP
Washington, DC

Jonathan D. Lupkin
Lupkin & Associates PLLC
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Timothy Holland brings this action against Chancellor Andre G. Bouchard of the Delaware Court of Chancery and Robert B. Pincus ("Defendants"), alleging violations of his First and Fourth Amendment rights under 42 U.S.C. § 1983. Before me is Defendants' motion to

dismiss Plaintiff's First Amended and Supplemental Complaint, (Doc. 21), which, among other bases for dismissal, argues that I should abstain from exercising federal jurisdiction over this action under the *Younger* and *Burford* abstention doctrines. Because I find that this action falls within circumstances warranting *Younger* abstention, Defendants' motion to dismiss is GRANTED.

## I. Factual and Procedural Background[1]

### A. *The Delaware Action*

This case arises out of litigation in the Delaware Court of Chancery involving TransPerfect Global, Inc. ("TransPerfect"), a company that is privately held by Elizabeth Elting, who owns 50 percent of the company; Philip Shawe, who owns 49 percent of the company; and Mr. Shawe's mother, who owns one percent of the company. (Am. Compl. ¶¶ 6–7 & n.2, n.3.)[2] Although TransPerfect is a solvent and profitable company, Chancellor Bouchard, upon consideration of the issues involved, granted Elting's petition to dissolve TransPerfect in a decision and order dated August 13, 2015 (the "August 2015 Opinion and Order"). (*Id.* ¶ 10.) Chancellor Bouchard further appointed Pincus, a member of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, to serve as custodian for TransPerfect in order to supervise the sale of TransPerfect, and also to act as a third director to break any deadlock between Shawe and Elting. (*Id.* ¶¶ 5, 11.)

As a result of the August 2015 Opinion and Order, "Plaintiff—and many other TransPerfect employees—became quite concerned regarding the future of TransPerfect and their

---

[1] The factual summary is drawn from the allegations of the First Amended and Supplemental Complaint, unless otherwise indicated, which I assume to be true for purposes of this motion. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the First Amended and Supplemental Complaint, filed on October 31, 2016. (Doc. 20.)

2

own jobs and careers." (*Id*. ¶ 15.) Plaintiff maintains that none of the TransPerfect employees—including Plaintiff—were parties to the TransPerfect litigation, were able to intervene in the TransPerfect Litigation, or had standing to appeal Chancellor Bouchard's August 2015 Opinion and Order. (*Id.* ¶¶ 13, 14.) However, Plaintiff and other TransPerfect employees wished to publicly express their concerns with the forced sale. (*Id.* ¶ 16.) As a result, on April 26, 2016, a number of TransPerfect employees published an open letter, urging the public to voice objection to Chancellor Bouchard's appointment of a custodian for the forced sale. (*Id.* ¶ 17.) On May 11, 2016, a number of TransPerfect employees formed an entity called "Citizens for a Pro-Business Delaware, Inc." ("Citizens"), which was incorporated by Plaintiff. (*Id*. ¶ 19.) Citizens issued a press release on May 23, 2016, setting forth why Chancellor Bouchard's August 2015 Opinion and Order was inappropriate. (*Id.*) The press release also promised to raise awareness "with Delaware residents, elected officials, and other stakeholders, to ensure they understand the consequences the Court's ruling would have on the state and its underlying economy." (*Id.* ¶ 19.) Citizens also retained a professional public relations firm, as well as a lobbyist to "argue its cause" to the Delaware State Legislature. (*Id.* ¶¶ 20, 21.)

On the same day as Citizens issued its press release, written instructions—which Plaintiff believes Pincus "caused . . . to [be] issued"—were issued to all TransPerfect employees, noting that employees had spoken to the media and, in some instances, attempted to pressure the Delaware court, and stating a belief that "those actions are counterproductive and [] they should stop." (*Id.* ¶¶ 22, 23.) Joel Mostrom, who was hired by Pincus to assist Pincus in executing his custodian duties, called Plaintiff, asked Plaintiff to identify the other TransPerfect employees who were members of Citizens, and implied that Plaintiff's employment could be at risk if Citizens' efforts continued and if Plaintiff did not cooperate. (*Id.* ¶¶ 23, 24.)

3

On May 27, 2016, Ms. Elting's attorneys wrote to Chancellor Bouchard to complain about Citizens' actions. (*Id.* ¶ 26.) On July 11, 2016, Ms. Elting's attorneys stated that Pincus had unsuccessfully searched TransPerfect's server looking for communications related to the efforts of Plaintiff and Citizens. (*Id.* ¶ 28.) Finally, Pincus's attorneys submitted a proposed order to Chancellor Bouchard intended to establish the procedure for TransPerfect's forced sale, which afforded Pincus the right to demand that employees deliver private communications devices for inspection, vested Pincus with full authority over all employment decisions, made all TransPerfect employees subject to sanction by the Delaware Court for failure to cooperate fully, and directed that any employee actions be brought before Chancellor Bouchard. (*Id.* ¶¶ 29, 31–33.) Chancellor Bouchard entered the proposed order on July 18, 2016 (the "July 2016 Order"). (*Id.* ¶ 35.)

### B. *This Proceeding*

Plaintiff asserts that the July 2016 Order violates his rights. Specifically, Plaintiff contends that the order unconstitutionally chills his First Amendment rights by making him fear retaliation for speaking out and depriving him of his right to petition, and also violates his Fourth Amendment rights by giving Pincus the right to demand personal and private electronic records without any warrant, judicially challengeable subpoena, or probable cause. (*Id.* ¶¶ 37–40.) Plaintiff claims that he is unable to cause changes to the July 2016 Order by participation in the Delaware litigation, and points to the denial of Citizens' request for leave to file an amicus brief in the appeal before the Delaware Supreme Court from Chancellor Bouchard's July 2016 Order as evidence supporting his position. (*Id.* ¶¶ 41–44.) Notably, the "sole purpose" of the proposed "amicus was to urge that Chancellor Bouchard's Order be modified so that Mr. Pincus' appointment be as a provisional director to break deadlocks; not for the purpose of selling

4

TransPerfect." (*Id.* ¶ 42.) Plaintiff's belief that he could not seek redress for the alleged violations of his constitutional rights in the Delaware action prompted him to bring this action on July 26, 2016. (Doc. 2.)

On September 12, 2016, Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss, (Doc. 17), and on September 15, 2016, Plaintiff responded, (Doc. 18). I held a pre-motion conference on October 27, 2016, (Dkt. Entry Oct. 27, 2016), at which I heard the parties' preliminary arguments and set deadlines for Defendants' anticipated motion.

Plaintiff filed his First Amended and Supplemental Complaint on October 31, 2016, seeking that I (1) declare the July 2016 Order null and void insofar as it permits Pincus to demand Plaintiff's private property and electronic data, permits Pincus to terminate Plaintiff's employment for publicly expressing and disseminating his views concerning the forced sale or petitioning any legislative body or court for redress of his concerns, requires Plaintiff to bring claims only in the Delaware Court of Chancery, and subjects Plaintiff to any sanctions; (2) forever and permanently enjoin Chancellor Bouchard from enforcing any part of the July 2016 Order against Plaintiff; and (3) forever and permanently enjoin Pincus from terminating or causing the termination of Plaintiff's employment for disseminating his personal views regarding the forced sale or otherwise exercising his right to petition, and also enjoin Pincus from obtaining access to or demanding production of Plaintiff's personal devices, except by written subpoena. (*See* Am. Compl. at 11–12.) Defendants then filed their motion to dismiss on November 4, 2016, (Docs. 21–24), Plaintiff filed his opposition on November 28, 2016, (Docs. 27–28), and Defendants filed their reply on December 5, 2016, (Doc. 29). Finally, Defendants filed a letter on February 14, 2017, noting that the Delaware Supreme Court had affirmed the July 2016 Order as well as Chancellor Bouchard's decision to impose sanctions on Shawe, (Doc. 30), and

Plaintiff filed a response to that letter on February 21, 2017, (Doc. 31).

## II. Legal Standards

The Supreme Court has recognized certain classes of cases in which the overriding obligation of federal courts to decide cases within the scope of their jurisdiction is overcome and abstention is warranted in light of "the prospect of undue interference with state proceedings." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). The *Younger* abstention doctrine exemplifies one such class. *Id.* Although *Younger* originally held that abstention is warranted where there is a parallel, pending state criminal proceeding, *see Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court has extended *Younger* to "particular state civil proceedings that are akin to criminal prosecutions or that implicate a State's interest in enforcing the orders and judgments of its courts," *Sprint*, 134 S. Ct. at 588. As a result, *Younger* abstention can be applied in three "exceptional" circumstances: "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* (quoting *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989)). In addition to its application to parties to a litigation, *Younger* abstention may apply "to the claims of third-parties who are not directly involved in any pending state proceeding." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 82 (2d Cir. 2003).

## III. Application

Defendants contend that this action concerns the third category for *Younger* abstention enumerated in *Sprint*, (*see* Defs.' Mem. 11–12),[3] and I agree. Abstention is appropriate here

---

[3] "Defs.' Mem." refers to the Memorandum in Support of Defendants' Motion to Dismiss the First Amended and Supplemental Complaint. (Doc. 22.)

because the Delaware Court of Chancery has a strong interest in enforcing its orders relating to the governance and management of Delaware corporations. *See, e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (explaining the "importance to the States of enforcing the orders and judgments of their courts" and noting that "[t]here is little difference between the State's interest in forcing persons to transfer property in response to a court's judgment and in forcing persons to respond to the court's process on pain of contempt"); *Juidice v. Vail*, 430 U.S. 327, 335–36 (1977) (abstention applies to State's interest in the contempt process, "through which it vindicates the regular operation of its judicial system"); *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 428 (2d Cir. 2015) (abstention applied to challenge to State court's order that plaintiff pay half of fees of attorney appointed to represent his children because lawsuit implicated the way State courts manage their own divorce and custody proceedings).[4]

Although Plaintiff maintains that his challenge does not impact the sale procedure given the isolated focus of his concerns and, therefore, does not interfere with the process by which judgment is obtained or affect compliance with a valid state court judgment, (Pl.'s Opp. 10),[5] I find his arguments unpersuasive and without merit. The provisions to which Plaintiff objects relate to the ability of the Delaware Court of Chancery to enforce the July 2016 Order, as well as the ability of Pincus to fulfill his duties as custodian and carry out the sale. For these same reasons, Plaintiff's challenge also implicates Delaware's ability to govern and manage

---

[4] Plaintiff asserts that *Younger* abstention does not apply because he is not a party to the underlying state court proceeding. (*See* Pl.'s Opp. 5–9.) However, as previously stated, *Younger* may apply "to the claims of third-parties who are not directly involved in any pending state proceeding." *Spargo,* 351 F.3d at 82. Here I find that Plaintiff's legal interests are sufficiently intertwined with the legal issues being litigated in the underlying proceeding before Chancellor Bouchard for *Younger* abstention to apply.

[5] "Pl.'s Opp." refers to the Memorandum in Law in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint. (Doc. 28.)

corporations.  *See Pennzoil Co.,* 481 U.S. at 13.

Additionally—and in full consideration of the Supreme Court's admonition that these factors are not dispositive, but rather "additional factors appropriately considered by the federal court before invoking *Younger*," *Falco*, 805 F.3d at 427 (quoting *Sprint*, 134 S. Ct. at 593)—I further find that the Delaware proceeding is a pending state court proceeding that implicates an important state interest, and that the Delaware proceeding affords Plaintiff "an adequate opportunity for judicial review of his [ ] federal constitutional claims," *id.* (quoting *Spargo*, 351 F.3d at 75).  Indeed, that Plaintiff and certain TransPerfect employees (1) published an open letter to the public urging them to voice objection to Chancellor Bouchard's appointment of a custodian for the forced sale, (2) caused Citizens to issue a press release setting forth why Chancellor Bouchard's August 2015 Opinion and Order was inappropriate and promising to raise awareness "with Delaware residents, elected officials, and other stakeholders, to ensure they understand the consequences the Court's ruling would have on the state and its underlying economy," and (3) caused Citizens to retain a professional public relations firm and a lobbyist to "argue [the] cause" to the Delaware State Legislature, belies any argument that this lawsuit does not implicate an important state interest.

Furthermore, in response to the interlocutory appeal filed by the Shawes, the Delaware Supreme Court affirmed Chancellor Bouchard's judgment, (*see* Doc. 30-1), and to this Court's knowledge, TransPerfect has yet to be sold and proceedings before Chancellor Bouchard remain ongoing.  Moreover, the July 2016 Order permits TransPerfect employees to raise any objections before the Delaware Court of Chancery, (*see* Am. Compl. ¶ 32), and Plaintiff never attempted to raise his constitutional issues there, (*see* 10/27 Tr. 6:9-7:4 (Plaintiff stating he did not make an attempt to get voluntary agreement that the materials at issue would be protected), 25:16-27:6

(Plaintiff did not deny that the order provided a chance to challenge the action, but instead arguing that "[t]here is no constitutionally compliant opportunity to challenge [the order]"). In fact, as Plaintiff readily admits, Citizens did endeavor to file an amicus brief, and specifically did not include any of the constitutional concerns raised in this litigation. (*See* Am. Compl. ¶ 42.) *See Pennzoil*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.").

Since I deem abstention appropriate in this case, I need not and do not address Defendants' arguments that *Burford* abstention applies, that Plaintiff is not entitled to injunctive relief, that Plaintiff's First Amended and Supplemental Complaint fails to state a claim, and that most of Plaintiff's claims are not ripe. *See Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995) (concluding district court "should have dismissed" action without reaching merits of claim where *Younger* applied on its face).

## IV. Conclusion

For the reasons stated herein, Defendants' motion to dismiss, (Doc. 21), is GRANTED. The Clerk of Court is respectfully directed to terminate the open motion at Document 21 and close this case.

SO ORDERED.

Dated: September 19, 2017
 New York, New York

Vernon S. Broderick
United States District Judge

9